## William Struthers v. The People of the State of Illinois

1. REPEALING CLAUSE—*when, adds nothing to the legal effect of an act.* The words, "all other acts and parts of acts in conflict with this act," in a repealing section of a legislative act, adds nothing to the legal effect of such act.

2. STATUTES—*how to be construed.* The only purpose sought to be accomplished by the construction and interpretation of statutes is to ascertain the legislative intent.

3. STATUTES—*previous legislation as affecting construction of.* In order to ascertain the legislative intent, it is proper to take into consideration previous legislation that has been had in the state upon the subject under consideration.

4. "SUCH"—*construed as equivalent to "any."* With respect to the statute under consideration in this case, it is held that the word "such" is the equivalent of "any."

5. REPEAL BY IMPLICATION—*application of rule of, to special act.* A special act will sometimes be in part repealed by the terms of a general one.

6. EMPLOYMENT OF CHILDREN—*age limit in coal mines.* Section 11 of the Child Employment Act of 1903 repealed by implication section 22 of the Miners Act of 1899 in so far as it permitted the employment of children of the age of fourteen years.

Proceeding by information. Error to the County Court of Macoupin County; the Hon. JOHN B. VAUGHN, Judge, presiding. Heard in this court at the May term, 1904. Affirmed. Opinion filed October 14, 1904.

LAWRENCE & FOLSOM, for plaintiff in error.

H. J. HAMLIN, Attorney General, and JAMES M. MAHONEY, State's Attorney, for defendant in error; GEORGE B. GILLESPIE, Assistant Attorney General, of counsel.

MR. JUSTICE GEST delivered the opinion of the court.

This is an information in the County Court of Macoupin county charging the plaintiff in error with a violation of section eleven of the act entitled, "An act to regulate the employment of children in the State of Illinois and to provide for the enforcement thereof," which act went into effect July 1, 1903. Said section prohibits the employment of children under the age of sixteen years in divers em-

ployments specifically named, " or in any other employment
that may be considered dangerous to their lives or limbs or
where their health may be injured or morals depraved."
Defendant was found guilty and fine imposed upon him.

It is not disputed that defendant employed the boys to
work in the coal mine, and that they did so work, and then
were under the age of sixteen years and over the age of
fourteen years, and it is admitted by counsel for defendant
for the purposes of this case, that coal mining is an occupa-
tion dangerous to the life and limb of those employed
therein. Moreover, it is manifest from the Miners Act
itself that employment in a coal mine is classed by the legis-
lature among occupations dangerous to life, limbs and
health. The title and every section of the act clearly
shows it. Minute provision is made for the safety of em-
ployees from the moment they reach the shaft and enter
the cage to descend to their work until they again reach the
surface. It is recognized that danger lurks around them,
descending and ascending, in roadways, rooms and entries;
wherever they may be or go while in the mine; danger
from breaking ropes, falling rocks, damp, dust, explosions,
poisonous air and other things and conditions.

As stated by counsel for defendant, the sole question in
this case is, " whether said section eleven includes within
the scope of its operation the owners and operators of coal
mines." It is claimed by defendant that said section does
not apply to the employment in coal mines of boys under
sixteen years of age, but that section twenty-two of the act
entitled, "An act to revise the laws in relation to coal mines
and subjects relating thereto and providing for the health
and safety of persons employed therein," approved April
18, 1899, and in force July 1, 1899, is the only provision
applicable to such employment. Said section twenty-two
is as follows: " No boy under the age of fourteen years
and no woman or girl of any age shall be permitted to do
any manual labor in or about any mine, and before any boy
can be permitted to do any work in any mine he must pro-
duce to the mine manager or operator thereof, an affidavit

from his parent or guardian, or next of kin, sworn and sub-scribed to before a justice of the peace or a notary public, that he, the said boy, is fourteen years of age." This sec-tion prohibits the employment of boys under the age of fourteen years for work in any coal mine, and permits such employment of boys who have reached that age. The question presented is whether that clause of section twenty-two of the Miners Act which permits the employment of boys, who are of the age of fourteen years, in coal mines, was repealed by the Child Labor Act of 1903. If it was so repealed it was not in express terms but by implication. The repealing section of the Act of 1903 is as follows : "An act to prevent child labor, approved June 17, 1891, in force July 1, 1891, and all other acts and parts of acts in conflict with this act, are hereby repealed." If that clause in the Miners Act was repealed, it was because of irreconcilable conflict with the Act of 1903.

It is argued by the People that employment in a coal mine is dangerous and that therefore the said clause of the Miners Act is expressly repealed by the above quoted re-pealing section. The words, " all other acts and parts of acts in conflict with this act," in a repealing section of a legislative act, add nothing to the legal effect of the act passed. The question still remains whether a conflict ex-ists, and if there be a conflict then the former act, so far as such conflict exists, is repealed by implication.

It is contended by plaintiff in error that repeals by im-plication are not favored; that such repeal will not be held unless the two provisions are irreconcilable; that the above quoted clause of the Miners Act and the Act of 1903 are *in pari materia* and are to be construed together and effect given to each, if possible; that it must appear to have been the intention of the legislature to repeal; otherwise the former act will not be held as repealed; and that general words in a statute, following a specific enumeration, in-clude only cases of the same kind enumerated. Each of these propositions is a correct statement of the law. It is also urged that a subsequent statute, which is general, does

not abrogate a former statute, which is particular. This proposition is also correct in general but it is at times difficult of application and is subject to exception. At the outset it is necessary to bear in mind that the only purpose sought to be accomplished by the construction and interpretation of statutes is to ascertain the legislative intent. All the rules adopted by the courts for such construction and interpretation have their basis in their supposed adaptability to throw light on that inquiry.

In order to ascertain the legislative intent in the present instance, it is proper to take into consideration the legislation that has been had in this state upon the subject of child labor, the existing statutes, and the evil, if any, to be remedied. An act approved June 17, 1891, was entitled " An act to prevent child labor." It prohibited the hiring of any child under the age of thirteen years except where the labor of such child constituted the means of support of an aged or infirm relative, and then only upon a certificate issued as provided by the act. The act approved June 17, 1893, was entitled, " An act to regulate the manufacture of clothing," etc., and provided by section four, that " No child under fourteen years of age shall be employed in any manufacturing establishment or factory or workshop in this state," and further provided that no child between the ages of fourteen and sixteen years should be employed by any person, firm or corporation employing children except upon compliance with certain conditions stated. An act entitled in the same words as the act first above mentioned was approved June 9, 1897, and went into effect July 1, 1897. Section six of this act provides :   " No child under the age of sixteen years shall be employed or permitted or suffered to work by any person, firm or corporation in this state at such extra-hazardous employment whereby its life or limb is in danger or its health is likely to be injured or its morals may be depraved." It is apparent from a reading of that act that the word " such " above quoted means " any." The next act containing provisions upon the subject of the employment of child labor appears to be the act first above

mentioned, upon which this information is based. It is manifest from this legislation that the employment of children has become of late years a growing evil. The development of industries already established, and the formation of new ones, within even the last twenty-five years has been very remarkable, and the end appears not yet.

Very many of these, it has been found, can be successfully run by child labor and at much less expense for wages than by the labor of adults. It had come that large numbers of mere children were engaged in labor as continuously as adults; the desire of poor parents to have the aid of their children and the cupidity of employers united to bring about practically a condition of servitude of such children. Their lives, limbs and health and their minds and morals were sacrificed for gain. The legislature interfered and the education of the children of the state was made compulsory; their employment in labor of any kind up to a certain age, and their employment in labor dangerous to life, limb, health or morals up to a still higher age, was forbidden; and now stands forbidden unless permitted in the one business of coal mining. A mere reading of these various acts of the legislature shows a constantly increasing sense of the evil existing, the necessity of restraining and preventing it, and the intent so to do. The Act of 1891 put the age at thirteen and upon certain conditions. The next General Assembly put the age at fourteen for employment in "any manufacturing establishment, factory or workshop" and upon certain conditions, which last named statute is still in force. Four years afterwards, by the Miners Act, the legislature prohibited the employment of boys under fourteen in coal mines, and four years after that, by the Act of 1903, prohibited labor of children under sixteen in a large number of employments of various kinds specifically named, and all other employments dangerous to life, limb, health or morals. Upon the point made that the general words, "any other employment that may be considered dangerous," etc., refer only to employments of the like kind before enumerated—section eleven of the Child Labor Act,

among other things, prohibits children under sixteen from
employment in sewing belts, adjusting belts to machinery,
oiling, wiping, or cleaning machinery, operating machinery
of many specified kinds, operating passenger or freight ele-
vators, or as pin boys in bowling alleys, preparing any com-
position in which dangerous or poisonous acids are used,
manufacture of paints, oils or white lead, manufacture of
goods for immoral purposes, in any theatre, concert hall or
place of amusement wherein intoxicating liquor is sold.

It is said by counsel: "The occupation of coal mining
is in no way kindred to any of the enumerated occupations
of section eleven." There would seem to be as close rela-
tion between the business of the pin boy and the boy in the
coal mine as between any of the employments forbidden.
The kinship lies in the dangerous nature of the occupation.
It is urged by plaintiff in error that the Child Labor Act of
1903 is general, and that the Miners Act is special and there-
fore the latter act is not within the scope of the former.
Potter's Dwarris, p. 272, expresses the proposition as fol-
lows: "General words may be qualified by subsequent
clauses in the same statute, but a thing given in particular
shall not be tolled by general words. The meaning of which
is that when the law descends to particulars such mere special
provisions must be understood as exceptions to any general
rules laid down to the contrary and the general rules must
not be alleged in confutation of the special provisions."
Can it reasonably be said that section twenty-two of the
Miners Act is to be treated as an exception from the pro-
hibition? Was that the legislative intent? Divers cases
are cited by plaintiff in error supposed to be pertinent to
that question in this case. We do not so consider them.
In each of the cases cited the two acts claimed to be in con-
flict were both permissive or both prohibitory. For illus-
tration, in Litchfield Coal Co. v. Taylor, 81 Ill. 590, one of
the cases cited, the suit was brought by the widow of a de-
ceased miner whose death had been occasioned by the wilful
violation of the provisions of chapter 93 of Revised Statutes
of 1874, but was brought in her name as administratrix of

his estate. She was allowed to amend so as to permit the action to proceed in her name as widow. Chapter 93 went into force July 1, 1872, and section fourteen of that chapter permits suit in the name of the widow. Chapter 70 of the Revised Statutes, entitled "Injuries," was first enacted February 12, 1853, and provides for suit, in case of death by wrongful act, neglect or default, in the name of the personal representative, the administrator. It was urged that it was error to make the change from administratrix to widow, but the court held otherwise, that both acts could stand, and say that chapter 93 is special, and embraces the cases specially enumerated therein, and chapter 70 is general and embraces all other cases. It is manifest there is no repugnance, no irreconcilable conflict between the two acts; that the provisions of both can be enforced; both acts are grants of power, permissions given, to sue. It is not a case of permission given in one act and of prohibition in another and subsequent act. In Potter's Dwarris, page 131, it is said: "In all cases when what is only permitted is found incompatible with what is prescribed, the latter has the advantage." The Act of 1899 is special in that its scope is the regulation of the business of coal mining. The Act of 1903 is special in that its scope is the regulation of child labor in the State of Illinois. The Act of 1903 and section 22 of the Act of 1899 are *in pari materia*, and are to be considered as framed on one system and having one object in view, to wit, the regulation of child labor in Illinois; and in construing them, contemporaneous, antecedent and subsequent statutes on the same subject-matter may be examined and considered. Potter's Dwarris, p. 189. If the latter part of a statute be repugnant to a former part of it, the latter part shall stand because it was last agreed to by the legislature. Idem, p. 113. Work in a coal mine is dangerous; the particular employments prohibited in the Act of 1903 are dangerous, and all other dangerous employments are prohibited. The Child Labor Act was passed four years after the Miners Act. But treating the Miners Act as a special act, the rule that the provisions of a special act are not to be deemed

as repealed by a general act is not without exception. In The People v. Thornton, 186 Ill. 172–173, it is said: "It is a well-settled principle of statutory construction, that a subsequent statute which revises the whole subject of a former one, and is intended as a substitute for it, operates as a repeal of the former, although it contains no express words to that effect. The rule, thus announced, is applicable even when the provisions of a prior law are contained in a special act. Andrews v. People, 75 Ill. 605; People v. Board of Education, 166 Ill. 388. Where the legislature frames a new statute upon a certain subject-matter, and the legislative intention appears from the latter statute to be to frame a new scheme in relation to such subject-matter and make a revision of the whole subject, there is in effect a legislative declaration, that whatever is embraced in the new statute shall prevail, and that whatever is excluded is discarded. The revision of the whole subject-matter by the new statute evinces an intention to substitute the provisions of the new law for the old law upon the subject." When we take into consideration the legislation of this state on the subject of care for its children, care for their physical, mental and moral integrity, and at the same time consider what evils existed, tending to show the intent of such legislation, when we examine such legislation in its separate acts and as a whole, special or general, when it is scrutinized with the aid of the rules of construction and interpretation pertinent thereto, it is not possible to avoid the conclusion that the age limit for employment of boys in coal mines was changed by the Act of 1903 from fourteen to sixteen years. Employers of child labor are bound to take notice of the character of employment for which they hire such labor and see to it that it be not dangerous to life or limb, health or morals. They hire such labor at their peril. Any other construction of the clause of section eleven under consideration would render it wholly nugatory.

The judgment will be affirmed.

*Affirmed.*