COMMON SCHOOL DISTRICT NO. 13 *v.* OAK GROVE SPECIAL

SCHOOL DISTRICT.

Opinion delivered February 19, 1912.

1.   STATUTES—EXTENSION BY REFERENCE TO TITLE.—Const. 1874, art. 5, section 22, provided that "no law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only, but so much as is revived, amended, extended or conferred shall be reenacted and published at length," is not contravened by Acts 1909, c. 321, authorizing the people outside of cities and towns to form special school districts, and providing that the laws already in force as to special school districts should apply to districts created under that act. (Page 413.)

2.   SAME—SUPERVISION BY COURTS.—The courts have nothing to do with the policy or expediency of legislation, so long as it does not violate constitutional limitations.   (Page 415.)

Appeal from Greene Circuit Court; *Frank Smith,* Judge; affirmed.

*Huddleston & Taylor,* for appellants.

1.   The act is invalid because it attempts to extend the provisions of all the provisions of the several enactments gov-

erning the organization of single school districts to
of any given territory in any county in this State, other than
incorporated cities and towns" * * *, by merely declar-
ing that "they may be organized into and established as a
single school district in the manner and with the powers therein
provided, with such modifications of said laws as are herein
provided." Art. 5 § 22, Const.; 29 Ark. 252; Kirby's Digest,
§ § 7668 to 7699 inclusive; 49 Ark. 135; 52 Ark. 290, 295; 14
So. 655; 6 So. (Ala.) 119; 23 So. (Ala.) 843; 42 L. R. A. 468;
2 So. (Ala.) 270.

2.  If the act is valid, and if the entire body of law relative
to single school districts has been legally conferred and granted
to rural districts, the section 7695 of Kirby's Digest must be
read into the act as a part of its provisions, and when this is
done we have, as a part of the act, an express legislative declara-
tion to the effect that it is not the purpose of the Legislature
to repeal any of "the provisions of the general school laws of
the State." 75 N. E. 52, 55.

*Johnson & Burr,* for appellee.

1.  The act is constitutional. Section 1 of the act confers
a new right upon portions of territory, which without the act
did not possess such right, and, this being true, the provisions
of the sections of the old law, to which reference is made, are
not required to be set out at length or reenacted in the new.
49 Ark. 131; 97 Pac. (Okla.) 338; 94 Pac. (Mont.) 634; 121
Fed. 282.

2.  The matter of the establishment of school districts,
the fixing of boundaries thereof, or the dividing or otherwise
altering existing districts, is vested primarily in the Legislature,
which may act independently of the inhabitants of the terri-
tory affected; and any hardships resulting therefrom is for the
Legislature, and not the courts, to remedy. 133 S. W. 329;
35 Cyc. 833; 25 Am. & Eng. Enc. of L. (2 ed.) 34; 139 Ia.
249; 47 Pac. (Okla.) 482.

WOOD, J.   1.   Act 321 of the General Assembly, approved
May 31, 1909, is as follows:

"An act to create special or single school districts in any
county in the State of Arkansas, with same powers as are now

granted to incorporated cities and towns for such purposes, and impowering the county judge to call said election.

"Be It Enacted by the General Assembly of the State of Arkansas:

"Section 1.  That when the people of any given territory in any county in this State, other than incorporated cities and towns, desire to avail themselves of the benefits of all laws of this State for the regulation of public schools in incorporated cities and towns, they may be organized into and establish as a single school district in the manner and with powers therein provided, with such modifications of said laws as are herein provided.

"Section 2.  That the petitions provided for in section 7669 of Kirby's Digest of the laws of Arkansas shall be accompanied by a map showing the territory asked to be made into the special district and shall be presented to the county judge of the county containing such territory, who shall perform the duties imposed upon the mayor of cities and towns in said original act, and with like force and effect, and said county judge shall designate the time and place for holding the election provided for therein, and shall appoint three qualified electors of the proposed territory to hold said election.

"Section 3.  That all school districts created under this act shall have the power to borrow money as any other special or single district, in cities or incorporated towns, when a majority of the legal electors vote for the same, at any annual school meeting.

"Section 4.  All laws and parts of laws in conflict with this act are hereby repealed, and this act be in force and effect from and after its passage."

These appeals challenge the validity of the act under section 22, article 5, of the Constitution, which provides:   "No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be reenacted and published at length."

In *Watkins* v. *Eureka Springs*, 49 Ark. 131, the court had under consideration a similar question.  There the act provided:

"Section 1.  That once during the year 1875, and every

succeeding year thereafter, the county court of any county or the municipal authority of any city or incorporated town in this State may call in the outstanding scrip or warrants of said county, or floating evidence of indebtedness of said city or incorporated town, for the purpose of cancelling and reissuing the same.

"Section 2.   That the law governing such proceedings in a county shall apply with equal force to cities and incorporated towns.   The council, recorder and marshal shall perform the duties laid down for the county court, the clerk and sheriff respectively."

Chief Justice COCKRILL, speaking for the court, said:

"The second section adopts the method of procedure provided for like cases where counties are concerned without reenacting the governing provisions.   We are not, however, prepared to assert that when a new right is conferred or cause of action given, the provisions of the Constitution quoted require the whole law governing the remedy to be reenacted in order to enable the court to effect its enforcement.   And we see no reason for refusing to apply the same rule to special proceedings like this.   To prevent that kind of legislation could not have been the mischief the provision was intended to remedy.   It could not have been the intention of the framers of the Constitution to put unreasonable restraints upon the power of legislation, and thus unnecessarily embarrass the Legislature in its work."

In *Scales* v. *State*, 47 Ark. 476, the same learned judge, speaking of this provision of the Constitution, said:

"It is well settled that this provision does not make it necessary when a new statute is passed that all prior laws modified, affected or repealed by implication by it shall be reenacted."

The act in question does not revive or amend any prior law, or extend or confer the provisions of any law in existence to the inhabitants of rural districts in any county in this State. On the contrary, it confers a new right upon the people in such territory—one that they never enjoyed before—of organizing themselves into single school districts in the same manner that such districts are organized in cities and incorporated towns, and confers upon them, when so organized, the same powers as are given these special school districts under existing laws.

The power granted by the Legislature was for the organization and establishment of single school districts of territory that was embraced in common school districts. The Legislature did not have in mind special school districts already in existence, and did not authorize the changing of the boundaries of any special school district that theretofore had been created by special act of the Legislature of territory outside of incorporated cities and towns. The authority given was for the organization of single school districts of territory that had not before been granted such privileges. See *Scott* v. *McCullough,* 75 N. E. 52; *Fulks* v. *Wright,* 75 N. E. (Ohio) 55.

In *Spratt* v. *Helena Power Transm. Co.,* 94 Pac. 631, the Supreme Court of Montana, was passing upon the following section of an act of the legislative assembly:.

"Any corporation organized under the laws of any State of the United States, or laws of the United States, and authorized to engage in business in this State, and engaged in business in this State, may acquire real property as provided in the Code of Civil Procedure, title 7, page 3, to the same extent, for the same purposes and in the same manner as corporations organized under the laws of this State." In that case, after an exhaustive review of the authorities the court held: "If an act is original in form, and by its own language grants some power, confers some right or creates some burden or obligation, it is not in conflict with the Constitution, although it may refer to some other existing statute for the purpose of pointing out the procedure in executing the power, enforcing the right, or discharging the burden."

Section 1 of the act under consideration is an original and distinct grant of power to the people outside of cities and towns to form special school districts, and that portion of the section which makes applicable the provisions of laws then in force refers to single school districts and relates only to the method of procedure in effectuating the grant of power. Such provisions do not contravene the section of the Constitution under consideration. *St. Louis & S. F. Rd. Co.* v. *Southwestern Tel. & Tel. Co.,* 121 Fed. Rep. 282, and cases there cited.

2.   Of course, the act under consideration will have the effect, when put in operation in the manner designated in the act, to change the boundaries of common school districts within

the territory organized into single school districts, and thus may work hardships in individual instances where the boundaries of common school districts are disturbed by the changes made; but with the policy or expediency of the legislation this court has naught to do, so long as the act does not violate constitutional limitations.

This court, in the recent case of *Norton* v. *Lakeside School District*, 97 Ark. 71, held that "a school district is a creature of the Legislature, or of some governmental agency of the Legislature. The Legislature is primarily vested with the power to create school districts, and it may create or abolish school districts, or change the boundaries of those established for any reason that may be satisfactory to it. The Legislature may do this without consulting and without obtaining the assent of those persons who reside in the territory affected." See 35 Cyc. 833; *School District of Fairview* v. *Ind. School Dist. of Burlington*, 139 Iowa 249; *School District* v. *Zodiker*, 47 Pac. 482.

The fourth section of the act repeals all laws and parts of laws in conflict. This has the effect of repealing the laws in force at the time with reference to the changing of the boundaries of common school districts affected by the operations of act No. 321, now under consideration, wherever the people of any given territory in any county in the State avail themselves of the provisions of the act in the manner specified therein.

3. There is nothing in this record, either by way of allegation or proof, to show that appellee, Oak Grove Special School District, was not organized and established in the manner required by the statute. In the absence of such showing, the presumption will be that such was the case. The act does not provide for an official canvass of the votes and a declaration of the result thereof by the county court. It does not require that the county court make and enter of record any orders as to such special election or as to the establishment of the special school district. The district is established, under the law, if a majority of the qualified electors within the territory named in the petition before the county judge shall vote for the establishment of such district.

Section 2 of the act provides that the county judge shall appoint three qualified electors in the proposed district to hold

said election.   The law thus contemplates that these three designated electors shall ascertain and make known the result of the election.

The judgments of the circuit court, affirming the action of the county judge in carrying out the provisions of the act under consideration and establishing the special school district are affirmed.